**ASSOCIATION OF AMERICAN MEDICAL COLLEGES**

v.

**Viken MIKAELIAN et al. d/b/a Multiprep.**

**Civ. A. No. 83–2745.**

United States District Court, E.D. Pennsylvania.

Aug. 8, 1983.

Bancroft D. Haviland, Carl W. Vogt, Joyce Reback, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiff.

John Mattioni, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Association of American Medical Colleges ("AAMC") seeks a preliminary injunction pursuant to Fed.R.Civ.P. 65 preventing defendant Viken Mikaelian ("Mikaelian") and Multiprep, Inc., Mikaelian's wholly owned and operated test preparation business, from using test preparation materials alleged by AAMC to infringe AAMC's own copyrighted test questions used in the administration of the Medical College Admission Test ("MCAT"). AAMC filed this suit on June 9, 1983 and sought a temporary restraining order and a writ of seizure to impound the allegedly infringing Multiprep test preparation materials. Based on the

plaintiff's averments and accompanying affidavits, which entitled the plaintiffs to such temporary relief pursuant to 17 U.S.C. §§ 501–503, the federal copyright statute, this Court granted plaintiff's request for a temporary restraining order and a writ of seizure, set a date for a hearing on plaintiff's motion for a preliminary injunction, and ordered expedited discovery in connection with the hearing. The hearing was continued and the temporary restraining order extended by stipulation of the parties. On June 29 and 30, this Court held a hearing on plaintiff's motion for a preliminary injunction and then permitted the parties additional time to brief the legal and factual issues presented. Based on the facts presented at the hearing, this Court finds that AAMC is entitled to a preliminary injunction pending trial on the merits. The Court makes the following findings of fact in connection with the preliminary injunction hearing.

AAMC is a non-profit education association composed of medical teaching institutions. Member institutions include 127 of the 128 medical schools in the United States, 425 teaching hospitals, and 71 academic societies. (N.T. 76). Among its functions, AAMC sponsors and supervises testing procedures for medical school applicants for the purpose of aiding member medical schools in evaluating applicants for admission. The lynchpin of this AAMC-run testing program is the MCAT. Virtually every American college student seeking admission to medical school takes the MCAT and his or her score on this test significantly affects the applicant's chances of being admitted to medical school and becoming a physician. The plaintiff has contracted with the American Institutes for Research in the Behavioral Sciences (the "Research Institute") in Stanford, California to devise and field test potential questions for use on the MCAT and has also contracted with the American College Testing Service ("ACT") in Iowa City, Iowa to administer the MCAT, particularly the security which surrounds the giving of an MCAT test.

The MCAT is given twice yearly, once in the Spring and in the Fall. The test consumes an entire day and is given on Saturday and Sunday at various testing centers throughout the country. Prior to arriving at the test center, the test taker (a prospective medical school applicant) has registered for the test, paid $45 to take the test, and been given an identification number and card by ACT acting for AAMC. When arriving at the test center, the applicant must present this identification card and other identification to show that the person arriving at the test center and taking the test is in fact the person who registered to take the test and whose subsequent score will be transmitted to medical schools reviewing his application for admission. AAMC, in registering test takers, has reserved the right to void test scores where a registrant arranges for someone else to take the test.

After identification, the test taker receives a test form composed of four separate test booklets. The test form contains questions seeking to test the taker's knowledge in the areas of biology, chemistry, physics, science problems, reading skills analysis, and quantitative skills analysis. When the test is graded, a separate score is determined for each set of questions. In 1977, AAMC adopted the current version of the MCAT with the above-noted categories of questions. Prior versions of the MCAT contained questions on other subject areas. Since the advent of the post-1977 MCAT, AAMC has developed 25 test forms, several of which were introduced as evidence at the hearing concerning the motion for a preliminary injunction.

Each of the test forms contains approximately 300 questions which, as heretofore noted, are developed by the Research Institute for AAMC. To produce these questions, the Research Institute selects question writers by reviewing their qualifications and then asks the writers to submit potential test questions. After the proposed questions are received, the Research Institute edits the items, tests each question for accuracy, clarity, and fairness, produces any art work or other graphics necessary to illustrate the question, and employs statisti-

cal analysis to evaluate the relative difficulty of the questions. Questions are field tested through use as non-scored questions in the MCAT, thereby allowing the Research Institute to ascertain the performance of typical MCAT test takers on the potential question. If a proposed test question is fair, accurate, and neither too difficult nor too easy, it is approved for use in an MCAT test form. After approval, the Research Institute continues to check to make sure the question is current and accurate.

In each MCAT, AAMC usually includes questions which have been used on previously given MCAT's. The percentage of repeated questions may be as high as fifty percent on a given MCAT test form. (N.T. 70, 106). The percentage of repeated questions is usually at least 20% of any given test form. AAMC repeats some questions in order to provide a basis for comparing one test group (e.g., April, 1983) with another test group (e.g., all those who took the test in the Fall of 1982), so that AAMC can determine the relative comparability of test groups and test questions. This is done so that member medical schools will be able to use the MCAT score of applicants as a consistent benchmark of the applicant's knowledge when evaluating applicants who have attended different undergraduate institutions at different times.

AAMC also repeats test questions for another reason. It is their position that it is difficult to draft a large number of fair and useful questions in the basic science subjects of biology, inorganic chemistry, organic chemistry, and physics. If the MCAT asks highly sophisticated questions in these areas, test takers with extensive education in these areas would have a substantial advantage over test takers (and medical school applicants) who have taken only basic science courses in preparation for medical school. Once limited to basic science course knowledge, the potential field of good MCAT questions becomes sufficiently narrow that repetition of questions is necessary and cost-effective for AAMC so long as the MCAT is given under tight security so that these reusable questions are not availa-

ble to the applicants prior to the test session. The recycled MCAT questions are used periodically and in a random fashion to further minimize the potential for "leaks" of the old test questions to future test takers. Among the other security measures used by AAMC are the numbering of test booklets given to test takers. At the end of the testing session, these books are recollected and stored under lock and key. No test taker is permitted to leave the testing center with a test booklet. Test takers are also prohibited from bringing paper with them to the test so that they cannot copy test questions during the administration of the test.

AAMC has never published an MCAT test nor has it published any of the old MCAT test questions. AAMC does, however, publish a student manual which contains "sample" MCAT questions that have also been developed by the Research Institute for use solely in the student manual. AAMC has never distributed or otherwise made available any of the old MCAT questions, nor has it given anyone permission to reproduce, distribute, or display an MCAT test or question or portion of a question.

Defendant Viken Mikaelian is a 28-year-old graduate of the University of Pennsylvania. In 1979, he began a test preparation course under the business name of Multiprep. Multiprep offers organized preparation courses designed to better equip students for the MCAT. Mikaelian and Multiprep have offered this course since 1979. Currently, Multiprep charges $485 as tuition for the 14-week prep course. Multiprep has offices both in Philadelphia, near the University of Pennsylvania, and in Ardmore. Mikaelian is the sole shareholder, director, and executive officer of Multiprep.

Mikaelian has been more than a test preparer. He has been a frequent test taker as well. Since 1978, he has taken the MCAT on eight separate occasions. Mikaelian took the MCAT in: (1) Spring, 1978 at the University of Pennsylvania test center; (2) Fall, 1978 at the University of Delaware; (3) Spring, 1979 at the University of Dela-

ware; (4) Spring, 1980 at Wilkes College; (5) Fall, 1980 at the University of Delaware; (6) Fall, 1981 at the University of Delaware; (7) Fall, 1982 at the University of Delaware; and (8) Spring, 1983 at Franklin and Marshall University. At these testing sessions, Mikaelian was given and took the MCAT using MCAT test forms 4, 2, 8, 11, 13, 16, 20, and 23, respectively. (*See* N.T. at 36–37).

Multiprep, as part of the prep course curriculum, distributes practice questions for its students to use in preparing for the MCAT. These questions, referred to as "facsimile" MCAT questions by Multiprep, are distributed in test booklets which contain the notation "copyright, 19___, Multiprep, Inc." (N.T. at 113–14, 186–87). At the hearing, plaintiff introduced as evidence 15 of these Multiprep test booklets. Plaintiff also introduced 15 MCAT test forms. A comparison of the Multiprep test questions with the actual MCAT test forms shows beyond all doubt that most of the Multiprep questions are copies of the MCAT questions. The Multiprep booklets are composed almost entirely of questions which appeared on MCAT forms, 4, 11, 13, 16, and 20. As heretofore noted, these test forms were administered at the tests which were taken by defendant Mikaelian between 1978 and 1983. A comparison of the Multiprep questions with the MCAT questions shows striking similarity. Many of the Multiprep test questions are not only word-for-word reproductions of the MCAT test questions, but also have the same typeface and graphic irregularities (*e.g.*, an uneven line) found on the MCAT question. Appendix A, attached hereto, lists the MCAT tests and their Multiprep counterparts and identifies them by Multiprep Booklet number and MCAT form number.

The evidence presented at the hearing showed hundreds of such word-for-word imitations of the MCAT questions. This repeated word-for-word similarity cannot be mere coincidence, nor can it be explained as the independent work product of Mikaelian. This repeated exact similarity can only be explained by copying.

The evidence presented at the hearing also showed that 15 Multiprep test preparation booklets contained 879 questions that had appeared, word-for-word, on previously administered MCAT tests. These 15 Multiprep booklets contained a total of 1081 "practice" test questions. In other words, nearly 90% of the questions in these Multiprep test practice booklets were actual MCAT test questions that had appeared on MCAT test forms which were administered to defendant Mikaelian on the 8 occasions that he has taken the MCAT.

On April 9, 1983, an MCAT test using MCAT form 22 was administered at the University of Pennsylvania and at other testing locations throughout the country. MCAT form 22 was composed in large part of materials that had previously appeared on MCAT form 13. (N.T. at 71). Multiprep practice booklets 9–1, 9–2, Biology 4, Chemistry 4, Physics 4, Physics 5, Reading Test 2, Reading Test 3, Quantitative Skills 3, and Test 5–4, all booklets submitted in evidence at the hearing, contained many questions that had previously appeared on MCAT form 13 and also were used in constructing MCAT form 22. Multiprep students, who had been able to use these test preparation booklets for more than 8 weeks prior to the April, 1983 MCAT thus had a significant advantage over others taking MCAT form 22.

Plaintiff AAMC seeks a preliminary injunction contending that continued use of the actual MCAT questions by Multiprep will destroy the accuracy and comparability of the MCAT because Multiprep students will have an unfair advantage over others taking the MCAT. AAMC began investigating Multiprep and initiated this litigation when it found that those who took the April, 1983 MCAT in Philadelphia who had also taken an 8 week or longer preparation course did substantially better on the April MCAT than did those students who had taken a preparation course of less than 8 weeks or had taken no preparation course at all. Multiprep, which lasts 14 weeks, is the only preparation course in the Philadelphia area that lasts more than 8 weeks.

AAMC also received anonymous phone calls from students who had taken the April, 1983 MCAT and reported that many of the MCAT test questions were available to those enrolled in the Multiprep course. (*See* Affidavit of Robert L. Beran, June 8, 1983, at 10–13).

Based on the evidence presented at the hearing, the plaintiffs have shown that they are entitled to a preliminary injunction against the defendants. To obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of eventual success in the litigation; and (2) that the movant will be irreparably injured pendente lite if relief is not granted. While the burden rests upon the moving party to make these two requisite showings, the district court must take into account whenever relevant (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. *See Constructor's Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978); *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir.1975); *Klitzner Industries, Inc. v. H.K. James & Co.*, 535 F.Supp. 1249 (E.D.Pa.1982). In deciding a motion for a preliminary injunction, the district court has broad discretion since its task involves weighing the benefits and burdens that granting or denying the injunction will have on each of the interested persons and the public. *See Penn Galvanizing Company v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir.1972); *North Penn Oil and Tire Co. v. Phillips Petroleum Co.*, 358 F.Supp. 908, 919 (E.D.Pa.1973).

■ In order to sustain a claim for copyright infringement, plaintiff must show that its work is a validly copyrighted work and that the copyright is held by the plaintiff. *See Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F.Supp. 125, 138 (D.N.J. 1982); 3 M. Nimmer, Copyright, § 13.01(a) at 13–3 (1982 Ed.). The holder of the copyright must then prove that the defendant had copied the protected work and that there is substantial similarity between the two works. *See Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir.

1975), *cert. denied, sub nom., Universal Athletic Sales Co. v. Pinchock*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). The criterion for determining whether there is substantial similarity is whether an ordinary lay observer would detect a substantial similarity between the works. *Id.* at 907; *Ideal Toy Corporation v. Fab-Lu, Ltd.*, 360 F.2d 1021 (2d Cir.1966).

■ It is not necessary that the plaintiff show direct evidence of copying the original to establish the element of copying in an infringement action. *See Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62 (3d Cir.1978), *cert. denied*, 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193. When direct evidence is lacking, circumstantial evidence of access to the protected work and substantial similarity between it and the alleged infringing work may create an inference of copying. *Id.* at 64. *See also Klitzner, supra*, 535 F.Supp. at 1254; *Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. 154, 157 (E.D.Pa.1980).

Plaintiff AAMC has shown that it is the holder of the copyrights on the MCAT test questions which appeared in the Multiprep booklets. All MCAT test forms and test questions are copyrighted upon their creation under the Copyright Act of 1976 (17 U.S.C. § 101, *et seq.*). AAMC, the sole proprietor of these test questions, has the exclusive rights of reproduction, distribution, and display of these questions. *See* 17 U.S.C. § 106. Since 1976, AAMC has registered every test form and its questions with the U.S. Copyright Office pursuant to 17 U.S.C. § 408. MCAT forms 4, 11, 13, 16, and 20, the MCAT forms from which identical Multiprep practice questions were formulated, have been registered with the U.S. Copyright Office and AAMC possesses certificates of this registration. These certificates, admitted as evidence at the hearing, constitute prima facie evidence of the validity of the copyright of the test questions. *See* 17 U.S.C. § 410(c); *American International Pictures, Inc. v. Foreman*, 576 F.2d 661 (5th Cir.1978); *Herbert Rosenthal Jewelry Corp. v. Grossbardt*, 428 F.2d 551 (2d Cir.1970); *Klitzner*, 535 F.Supp. at 1254.

**150**

The certificates thus establish prima facie that the MCAT test questions are original and copyrightable and that AAMC has complied with the statute in registering and thus establishing a copyright for each of its test questions. The U.S. Copyright Office has in fact promulgated special procedures for registering copyrights in test questions while preserving the confidentiality of the test questions. The regulations provide that:

In the case of any secure test, the Copyright Office will return the deposit to the applicant promptly after examination: Provided, that sufficient portions, description, or the like are retained so as to constitute a sufficient archival record of the deposit.

17 C.F.R. § 202.20(c)(2)(vi). The regulation has been held to be valid under the Copyright Act. *See National Conference of Bar Examiners v. Multistate Legal Studies*, 692 F.2d 478 (7th Cir.1982) (court rejects bar exam prep course's challenge to the copyright regulation and to copyrightability of bar examination questions).

The defendants have contended that the MCAT test questions are not copyrightable in that they are merely statements of scientific fact, facts which are in the public domain. However, the MCAT questions are undoubtedly the result of original work performed by scientists and scholars retained by AAMC and the Research Institute to create MCAT questions. Certainly, any valid MCAT science questions will invoke scientific fact in order to pose a problem which will test the scientific knowledge of the test taker. However, the mere fact that MCAT questions refer to scientific fact does not place these questions in the public domain. *See Russ Berrie & Co., Inc. v. Jerry Elsner Co.*, 482 F.Supp. 980, 987 (S.D. N.Y.1980); *Strachborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1399, n. 6 (N.Y. 1973). AAMC has shown that its copyrights of the test questions at issue are valid.

AAMC has also shown that these protected questions were copied by the defendants. As noted earlier, direct proof of copyings is seldom available because the copyright infringer is unlikely to copy the protected work in the plain view of the copyright holder. Therefore, copying may be inferred from a showing that the defendant had access to the work and that the defendant's infringing work is substantially similar to the copyrighted work. *See Franklin Mint v. National Wildlife Art Exchange, supra*, 575 F.2d at 64. Access exists when a defendant has had a reasonable opportunity to view the copyrighted work. *See Franklin Mint, supra*, 575 F.2d at 64; *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F.Supp. 125, 146 (E.D.N.J.1982); *Goldman-Morgen, Inc. v. Dan Brechner & Co., Inc.*, 411 F.Supp. 382 (S.D.N.Y.1976). Defendant Mikaelian had ample reasonable opportunity to view the MCAT questions that were allegedly infringed. As heretofore noted, he took the MCAT on at least eight different occasions. On five of these occasions, he had access to the MCAT questions that have been infringed since he took the MCAT from test booklets containing these questions. This pattern of test-taking indicates that Mikaelian was not sitting for the exam in order to apply to medical school but was taking the MCAT in order to acquire knowledge of the test that could be used in the Multiprep course. For example, in the Fall, 1980 exam, Mikaelian's MCAT score was never higher than the 9th percentile of those tested in any one of the subject matter areas. *See Beran Affidavit at 14.* Mikaelian is an obviously intelligent young man who has begun and administered an apparently successful business. It defies logic that such a person would score so low on repeated sittings for the MCAT unless he was spending his time familiarizing himself with the test questions rather than answering the test questions.

Furthermore, in this case the actual MCAT questions and the Multiprep test questions are not merely similar—they are exact images of one another. The Multiprep questions are word-for-word copies of the MCAT questions. Even the typeface and the errors are the same. The Multiprep questions are photocopy quality reprints of

the MCAT questions. The Multiprep questions are thus more than substantially similar to the MCAT questions; they are duplicates of the MCAT questions. Where the allegedly infringing work is so strikingly similar to the protected work as to preclude the possibility of independent creation, copying may be proved even without the showing of access that has been made in this case. *See Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 113 (5th Cir.1978); *Testa v. Janssen,* 492 F.Supp. 198, 203 (W.D.Pa.1980). M. Nimmer, *Copyright,* § 13.01(B) at 13–6. The similarities found between the Multiprep questions and the MCAT questions are, at the very least, strikingly similar. They are similarities of a kind "that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." (*See Strachborneo v. Arc Music Corp.,* 357 F.Supp. 1393, 1403 (S.D.N.Y.1973); *see also, Testa v. Janssen, supra,* 492 F.Supp. at 203. In this case, the similarity is so overwhelming that no reasonable finder of fact could fail to conclude that the Multiprep questions were in fact copied from the MCAT questions. The use of these questions by Multiprep is thus an improper appropriation of AAMC's copyrighted test questions.

Arrayed against this impressive amount of · evidence showing copyright infringement, the defendants have made essentially two contentions. Their first contention is that the MCAT questions are not copyrightable because they contain statements of scientific fact which are in the public domain. As heretofore discussed by this Court (*see* p. 150, *supra*), this contention is without merit. AAMC has not only shown infringement but also has shown that the MCAT questions at issue are validly copyrighted and entitled to the protection of the Copyright Act.

The defendant's second contention is that Multiprep's use of the MCAT questions falls within the "fair use" exception to the protections of the Copyright Act which is codified at 17 U.S.C. § 107. This contention is also without merit. Section 107 provides:

Notwithstanding the provision of [17 U.S.C.] section 106 [providing exclusive rights to the holders of copyrights], the fair use of a copyrighted work, including such use by reproduction in copies or phone records or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use, the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107 (emphasis added).

At the threshold, to qualify for "fair use" exemption from suit under the Copyright Act, the party asserting the fair use defense must show that he is engaged in one of the activities enumerated in § 107. Multiprep has not carried its burden to show that it is in fact engaged in "criticism, comment, news reporting, teaching, ... scholarship, or research" within the meaning of the statute. Since the fair use exception to the Copyright Act is an affirmative defense to a suit for copyright infringement, the party asserting the exception bears the burden of production and persuasion to show that the exception (and the defense) is applicable. *See Letter Edged in Black Press, Inc. v. Public Building Commission of Chicago,* 320 F.Supp. 1303 (N.D. Ill.1970).

As heretofore noted, Mikaelian and Multiprep have not established that they are engaged in one of the protected activities enumerated in § 107. The defendants have merely asserted that they are engaged in

"teaching". This naked averment does not suffice to show the applicability of 17 U.S.C. § 107. To be sure, Mikaelian and Multiprep give test preparation courses, and provide instruction in test preparation as part of these courses. However, Multiprep students do not receive a degree, do not become qualified or certified in anything after taking the course, and may not use the course as a prerequisite for further education and training in any educational or vocational endeavor. It is thus at best unclear whether Multiprep's cram course is the type of activity protected by 17 U.S.C. § 107.

In determining whether the given use of a copyright is for "educational" purposes within the meaning of the statute, the courts have placed particular emphasis on whether the distribution of the copyrighted work by the alleged infringer "would serve the public interest in the free dissemination of information and whether their preparation requires some use of prior materials dealing with the same subject matter." *See Rosemont Enterprises, Inc. v. Random House, Inc.,* 366 F.2d 303 (2d Cir.1966), *cert. denied,* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967); *Public Affairs Associates, Inc. v. Rickover,* 268 F.Supp. 444 (D.D. C.1967); *Eisenschiml v. Fawcett Publications, Inc.,* 246 F.2d 598 (7th Cir.), *cert. denied,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957); *Rohauer v. Killiam Shows, Inc.,* 379 F.Supp. 723, 733 (S.D.N.Y.1974). Mikaelian and Multiprep do not freely disseminate the MCAT test questions they have copied. The questions are given only to those who pay $485 to enroll in a Multiprep course. The defendants have not sought to add their acquired knowledge of MCAT question content to the public realm.

It has also been stated that the fair use doctrine "permits copying of themes or ideas but not their expression." *See Bradbury v. Columbia Broadcasting System, Inc.,* 287 F.2d 478 (9th Cir.1961), *cert. denied,* 368 U.S. 801, 82 S.Ct. 19, 7 L.Ed.2d 15 (1961); *Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49 (2d Cir.1936). Other courts have defined fair use as "the privilege of using copyrighted material in a rea-

sonable manner without the copyright owner's consent." *Public Affairs Associates, Inc. v. Rickover, supra,* 268 F.Supp. at 450. *See also Toksvig v. Bruce Pub. Co.,* 181 F.2d 664 (7th Cir.1950). In this case, the defendants have made verbatim use of vast numbers of the plaintiff's copyrighted test questions. Such massive copyright infringement is not use of the protected work "in a reasonable manner." Therefore, this Court doubts that the defendants have established their right to refer to the four factors to be considered in determining whether the fair use doctrine is applicable to a particular case.

However, even if it is assumed that Multiprep courses are teaching activities within the meaning of the statute, the defendants cannot invoke the fair use defense unless they also show that they have made a fair use of the copyrighted materials according to the four criteria set forth in the statute. By all four of these measures, Multiprep's use of the MCAT questions, even if it is "teaching", is not fair use.

The first factor to be considered in determining fair use is "the purpose and character of the use", including whether such use is of a commercial nature or is for nonprofit educational purposes. Commercial use of copyrighted materials is less favored than nonprofit use. *See Martin Luther King Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.,* 508 F.Supp. 854 (N.D.Ga.1981); *Iowa State University Research Foundation, Inc. v. American Broadcasting Companies, Inc.,* 621 F.2d 57 (2d Cir.1980). One policy underlying this factor is that of encouraging education without raising the costs of nonprofit institutions. Profit-making institutions, if they are making use of copyrighted materials, should be capable of negotiating and paying to the copyright holder a fair fee for the use of the protected work.

■ Of course, the mere fact that a copyright user is a commercial enterprise will not preclude the applicability of the "fair use" defense. *See Warner Bros., Inc. v. American Broadcasting Companies, Inc.,*

523 F.Supp. 611 (S.D.N.Y.1981). However, a court should not strain to apply the fair use defense when it is being invoked by a profit-making defendant that has made extensive verbatim use of the plaintiff's copyrighted materials.

Even where a nonprofit corporation is making clearly educational use of copyrighted works, this has not in and of itself been sufficient to sustain a fair use defense. For example, in *Encyclopedia Britannica Educational Corp. v. Crooks,* 447 F.Supp. 243 (W.D.N.Y.1978), the court restrained a nonprofit educational services corporation from videotaping copyrighted films, making copies, and distributing them to public schools. The court reasoned that the fair use defense was inapplicable despite the clear nonprofit educational purpose of the program. As the *Crooks* court noted, the infringing activity did "not involve an isolated instance of a teacher copying copyrighted material for classroom use but concerns a highly organized and systematic program for reproducing videotapes on a massive scale." *Id.* at 252. Similarly, Multiprep has not copied a portion of a textbook to illustrate a problem for its students; it has made wholesale use of another organization's copyrighted materials. Multiprep's use of the MCAT questions has been highly commercial. Multiprep students pay $485 for a short-term test preparation course using the MCAT test questions. Mikaelian did not assemble the copyrighted materials and offer the Multiprep course to advance scientific knowledge among Philadelphia-area undergraduates. He sought and continued to seek income through the use of AAMC's copyrighted materials.

The second factor to be considered is "the nature of the copyrighted work." As heretofore noted, the MCAT test questions are original works painstakingly drafted and tested by the Research Institute and carefully administered under strict security conditions by ACT. Answers to the copyrighted questions are scored and used by medical schools in determining who will be admitted to medical school. The MCAT questions are created and copyrighted by a private organization for use in a testing and admissions process of service to its members. As noted, the development, testing, and administration of the questions is performed under strict security. The very purpose of copyrighting the MCAT questions is to prevent their use as teaching aids, since such use would confer an unfair advantage to those taking a test preparation course. Consequently, the MCAT questions are a type of copyrighted material which may not be fairly used under the circumstances presented by this case. *See National Conference of Bar Examiners v. Multistate Legal Studies, Inc., supra,* 692 F.2d at 484, n. 6.

The third fair use factor to be considered is "the amount and substantiality of the portion (of the copyrighted work) used in relation to the copyrighted work as a whole." As heretofore noted, nearly 90% of the questions in the Multiprep practice booklets were verbatim actual MCAT test questions. The greater the amount of the copyrighted work used, the less likely it is that the fair use exception is applicable. *See Walt Disney Productions v. Air Pirates,* 581 F.2d 751 (9th Cir.1978); *Rosemont Enterprises, Inc. v. Random House, Inc.,* 366 F.2d 303, 316 (2d Cir.1966), *cert. denied,* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967) (extensive verbatim copying cannot be fair use).

The final fair use factor to be considered is "the effect of the use upon the potential market for or value of the copyrighted work." As heretofore noted, Multiprep's use of the MCAT questions in their entirety, if continued, will make the copyrighted materials worthless to the copyrighted holder. A use of the protected work which destroys the value of the protected work to the copyright holder can hardly be considered fair. *See Meeropol v. Nizer,* 560 F.2d 1061 (2d Cir.), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1977); *Sampson & Murdock Co. v. Seaver-Radford Co.,* 140 F. 539 (1st Cir.1905).

Based on the evidence presented at the hearing and the applicable law, AAMC has clearly shown a reasonable prob-

ability of eventual success in this litigation. At this juncture, AAMC has set forth a strong case showing that the defendants have infringed its copyrighted materials while the defendants have failed to show the applicability of any exception to the copyright laws. AAMC has also shown that it will be irreparably injured pendente lite if relief is not granted. Generally, in an action for copyright infringement a showing of likelihood of success on the merits raises a presumption of irreparable harm. *See Klitzner Industries v. H.K. James & Co., supra,* 535 F.Supp. at 1258–59; *Custom Decor, Inc. v. Nautical Crafts, Inc.,* 502 F.Supp. at 157. *See also American Metropolitan Enterprises, Inc. v. Warner Bros. Records,* 389 F.2d 903, 905 (2d Cir.1968). Some courts have stated the rule as being that if a prima facie case of infringement is made, the plaintiff is entitled to a preliminary injunction without a detailed showing of danger of irreparable harm. *See Custom Decor, Inc. v. Nautical Crafts, Inc.,* 502 F.Supp. 154, 157 (E.D.Pa.1980); *Wainwright Securities, Inc. v. Wall Street Transcript Corp.,* 418 F.Supp. 620 (S.D.N.Y. 1976), *aff'd on other grounds,* 558 F.2d 91 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759; *Triangle Publications, Inc. v. Sports Eye, Inc.,* 415 F.Supp. 682, 684–85 (E.D.Pa.1976); 3 M. Nimmer *Copyright* § 14.06(A) at 14–50 and cases therein cited at n. 16. Although our attention has not been called to any Third Circuit decision specifically holding that in cases involving copyright infringement a presumption of irreparable harm attaches to a showing of infringement, the Court of Appeals has permitted under some circumstances a sufficient showing of likelihood of success on the merits to suffice to permit the issuance of a preliminary injunction in copyright cases. *See Kontes Glass Co. v. Lab Glass, Inc.,* 373 F.2d 319, 320–21 (3d Cir.1967); *Midway Mfg. Co. v. Bandai-America, Inc.,* 546 F.Supp. at 142 (Second and Seventh Circuits and many district courts have applied presumption of irreparable harm in copyright cases). *See also Virgin Islands v. Islands Paving, Inc.,* 714 F.2d 283, 285 (1983) (showing of statutory violation will in some cases permit entry of injunction without specific showing of irreparable harm).

In the instant case, however, AAMC did not rely solely on the presumption of irreparable harm but offered evidence tending to show irreparable harm. Dr. Robert Jones, an AAMC research associate in educational measurement and research who monitors the creation and administration of the MCAT performed by AAMC sub-contractors ACT and the Research Institute, testified at length at the hearing. He testified that if exact copies of the MCAT questions are available to the general public through the Multiprep course, these questions cannot be used in future MCAT tests. Already, AAMC faces a problem regarding its treatment of the students who took the April, 1983 MCAT in Philadelphia. AAMC currently plans to require students who took both the Multiprep course and the April MCAT to retest on a different MCAT. It is beyond doubt that the wrongful use of copyrighted MCAT questions by Multiprep has caused harm to AAMC. If Multiprep is permitted to continue infringing these copyrights, the magnitude of the harm will escalate.

Irreparable injury has been defined as "injury for which a monetary award cannot be adequate compensation [and] where money damages is inadequate compensation." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). As heretofore noted, as many as 50% of the questions on a given MCAT test may have been drawn from previous test questions. Obviously, continued use of copyrighted test questions by Multiprep could make worthless AAMC's stock of MCAT questions. These questions are the result of years of painstaking research and testing. Monetary damages could not compensate AAMC for this damage. Its procedures would not be capable of replenishing the valid test questions at a rate fast enough to allow continued administration of the MCAT in its present form. As heretofore noted, the MCAT is a vital part of the medical school admissions process used by

127 of the 128 American medical tests. Furthermore, AAMC is a nonprofit organization that exists to facilitate medical school admissions. The receipt of even a large sum of money from the defendants would not adequately compensate AAMC and its member medical schools for the disruption in the medical school admission process. The evidence presented at the hearing by AAMC also suggested that there may be a finite number of acceptable basic science questions for the MCAT.

The defendants did not present any evidence to contradict the plaintiff's evidence of irreparable harm. Instead, the defendants contended that AAMC should be able to create new questions at a rate of speed sufficient to replenish the copyright materials imperiled by Multiprep's infringement. The defendants offered no evidence to support this contention but merely argued that since other standardized tests used for law school and business school admissions do not repeat old test questions that AAMC should be able to administer the MCAT without reusing old MCAT questions. This argument may have appeal but it ignores the fact that the MCAT questions are validly copyrighted and are therefore entitled to the full protection provided under the United States copyright laws. It is not AAMC's burden to change its operation when these copyrights are infringed. Rather, it is the copyright infringer who must suffer from any wrongful acts of copyright infringement that may have been committed. AAMC is entitled by the copyright act to proceed in this manner. The reuse of old test questions when those questions have been kept secure undoubtedly saves expense to AAMC and its member medical schools. The copyright laws allow AAMC a preliminary injunction to prevent its system of MCAT administration from being irreparably injured by the acts of a copyright infringer.

This Court notes that AAMC has previously made a successful showing of irreparable harm from test question disclosure in its challenge to New York State's "Truth-in-Testing" law which would have required AAMC to make public MCAT questions af-ter the administration of each test. AAMC filed suit in the United States District Court for the Northern District of New York and was granted a preliminary injunction exempting it from the Act. *See Association of American Medical Colleges v. Carey*, 482 F.Supp. 1358 (N.D.N.Y.1980). Trial on the merits has not taken place. Only AAMC challenged the New York statute. Other standardized testing organizations have complied with the New York law rather than commence litigation over the matter. AAMC, however, instituted suit based upon its contention that the nature of the MCAT, with its emphasis on basic science questions, made AAMC less able than the non-science testing organizations to generate new and valid test questions.

As heretofore noted, the district court, in exercising its discretion as to whether to grant a preliminary injunction should weigh the benefits and burdens that granting or denying the injunction will have on other interested persons and the public. *See Penn Galvanizing v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir.1972). In this case, the balance of benefits and burdens falls squarely in favor of granting a preliminary injunction enjoining the defendant's use of the copyrighted MCAT questions. Certainly, the granting of the injunction will inconvenience Multiprep, which appears at this stage of the litigation to have built its test preparation course in large part upon use without permission of copyrighted MCAT questions. However, the granting of the injunction will not prohibit Multiprep from continuing to operate its test preparation course so long as it does not employ copyrighted MCAT questions. Multiprep certainly has a right to operate its test preparation business in a legitimate manner. Multiprep has no right, however, to profit from copyright infringement. Prospective medical school applicants desiring to take the Multiprep course will not be prejudiced by having to compete with the thousands of MCAT test takers throughout the country who will likewise be without access to the Multiprep copies of MCAT questions. The evidence in this case makes it clear that

AAMC will be substantially and irreparably harmed by the continued copyright infringement of Multiprep. Thus, the Court's consideration of the third prong of the factor to be considered in determining whether to grant a preliminary injunction weighs overwhelmingly in favor of granting such an injunction.

The same result obtains in considering the fourth factor to be weighed—the public interest. In the instant case, there appears to be no public interest consideration which would mitigate against issuing a preliminary injunction. *See Custom Decor, Inc. v. Nautical Crafts, Inc., supra,* 502 F.Supp. at 157. In fact, the opposite appears to be true. Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work. It is thus virtually axiomatic that the public interest can only be served by upholding copyright protec-

tions and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.

Accordingly, the Court will, for the reasons heretofore set forth, grant the motion of plaintiff AAMC for a preliminary injunction and will preliminarily enjoin the defendant from continuing to infringe the plaintiff's copyrighted MCAT test questions. An appropriate order will be accordingly entered.

## APPENDIX A

The following table juxtaposes a listing of the original MCAT questions which have been infringed by the defendants and the corresponding Multiprep test preparation booklets.

| MCAT Form (number of items) | Multiprep Booklet |
| --- | --- |
| F 11 (115), F 13 (10) (Pl. Ex. 21) (Pl. Ex. 23) | 9–1 (125 items; all from MCAT forms) (Pl. Ex. 20) |
| F 11 (57), F 13 (9) | 9–2 (66 items; all from MCAT forms) (Pl. Ex. 22) |
| F 11 (59) | 9–3 (68 items; 59 from an MCAT form) (Pl. Ex. 24) |
| F 11 (62) | 9–4 (68 items; 62 from an MCAT form) (Pl. Ex. 28) |
| F 13 (47), F 16 (48) (Pl. Ex. 25) | Biology Test 4 (95 items; all from (Pl. Ex. 29)    MCAT forms) |
| F 20 (62) (Pl. Ex. 26) | Biology Test 6 (65 items; 62 from (Pl. Ex. 30)    an MCAT form) |
| F 13 (44), F 16 (39) | Chemistry Test 4 (83 items; all from (Pl. Ex. 31)    MCAT forms) |
| F 13 (15), F 16 (14) | Chemistry Test 5 (29 items; all from (Pl. Ex. 32)    MCAT forms) |
| F 20 (67) | Chemistry Test 6 (67 items; all from (Pl. Ex. 33)    an MCAT form) |
| F 13 (45), F 16 (14) | Physics Test 4 (59 items; all from (Pl. Ex. 34)    MCAT forms) |
| F 13 (10), F 16 (9) | Physics Test 5 (37 items; 19 from (Pl. Ex. 35)    MCAT forms) |
| F 20 (51) | Physics Test 6 (60 items; 51 from (Pl. Ex. 36)    an MCAT form) |
| F 13 (54) | Reading Test 2 (68 items; 54 from (Pl. Ex. 37)    an MCAT form) |
| F 4 (26) (Pl. Ex. 27) | 5–1 (125 items; 26 from an MCAT form) (Pl. Ex. 38) |
| F 4 (21) | 5–2 (66 items; 21 from an MCAT form) (Pl. Ex. 39) |

## ORDER

AND NOW, this 8th day of August, 1983, upon consideration of plaintiff's motion for a preliminary injunction, and defendants' opposition thereto, a hearing having been held before this Court on June 28 and 29, 1983, for the reasons set forth in this Court's Memorandum of August 8th, 1983,

IT IS HEREBY ORDERED: The motion for a preliminary injunction filed by plaintiff American Association of Medical Colleges is GRANTED, and defendants Viken Mikaelian and Multiprep, Inc., their officers, agents, employees, successors, assigns and all persons in active concert or participation therewith are hereby restrained and enjoined pending the final determination of this action or until further order of this Court as follows:

1. From infringing, in any manner, the copyrighted Medical College Admission Test forms and test questions as described in the certificates of copyright bearing the following registration number and effective dates of registration:

64–461 — July 12, 1978
481–507 — May 8, 1980
573–475 — October 28, 1980
812–649 — December 3, 1981
1–041–334 — December 15, 1982

2. From infringing, in any manner, any other copyrighted Medical College Admissions Test forms, test questions, or other materials;

3. From continuing to distribute and display, causing to be distributed and displayed, and permitting to be distributed and displayed, or in any other manner using the following Multiprep test booklets to the extent that they infringe plaintiff's copyrighted materials:

Multiprep Test 9–1
Multiprep Test 9–2
Multiprep Test 9–3
Multiprep Test 9–4
Multiprep Biology Test 4
Multiprep Biology Test 6
Multiprep Chemistry Test 4
Multiprep Chemistry Test 5
Multiprep Chemistry Test 6
Multiprep Physics Test 4
Multiprep Physics Test 5
Multiprep Physics Test 6
Multiprep Skills Analysis:
   Reading Test 2
Multiprep Test 5–1
Multiprep Test 5–2
Multiprep Test 5–4
Reading Test 3
Quantitative 3

4. From advertising and continuing to advertise that Multiprep distributes and displays "facsimile" or "replica" Medical College Admission Tests.

5. Plaintiff American Association of Medical Colleges shall post with the Clerk of Court the bond of an approved corporate surety in the sum of $50,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully injured or restrained hereby.