**EDUCATIONAL TESTING SERVICES**

v.

**John KATZMAN, the Princeton Review, Inc., Robert S. Schekker and Pretest Review, Inc.**

**Appeal of John KATZMAN and The Princeton Review, Inc.**

**No. 85–5613.**

United States Court of Appeals, Third Circuit.

Argued Feb. 20, 1986.

Decided June 20, 1986.

Arthur R. Miller (argued), Harvard Law School, Cambridge Mass., Melvin Greenberg, Edward Dauber, Greenberg, Dauber & Epstein, Newark, N.J., Allan R. Freedman, Madonna M. Malin, Robert J. Schechter, Gordon, Hurwitz, Butowsky, Weitzen, Shalov & Wein, New York City for appellants.

John L. McGoldrick, John F. Brenner, McCarter & English, Newark, New Jersey, Howard P. Willens (argued), John Rounsaville, Jr., Carol F. Lee, Thomas P. Olson, Wilmer, Cutler & Pickering, Washington, D.C., Jon A. Baumgarten, William F. Patry, Paskus, Gordon & Mandel, New York City, Stanford von Mayrhauser, Russell W. Martin, Educational Testing Service Princeton, N.J., for appellee.

Before WEIS and SLOVITER, Circuit Judges, and ZIEGLER, District Judge [*]

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Educational Testing Service (ETS), a non-profit educational organization that prepares and administers numerous standardized tests, sought and was granted a preliminary injunction that enjoined defendants Princeton Review and John Katzman, its sole shareholder and president (collectively referred to as Review unless otherwise noted), from a wide range of activities involving ETS' tests and information therefrom.[1] 626 F.Supp. 527 (D.N.J.1985). Defendants appeal, challenging ETS' copyright claims to the material at issue and the propriety and scope of the injunction.

## I.

### INTRODUCTORY FACTS

ETS develops and administers testing programs, among them the Scholastic Apti-

---

[*] Hon. Donald E. Ziegler, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. The other two parties named as defendants were not parties to the preliminary injunction order and are not parties to this appeal.

tude Test (SAT) and Achievement Tests in specific subjects, which are both multiple-choice tests given to high school students for college admission purposes. ETS regards the tests as secret until they have been released by it and attempts to maintain strict secrecy with respect to these tests. It registers them for copyright under "secure test" registration. It makes the tests that it has "retired" available to the public.

Review is a company which charges a fee for preparing students to take the SAT and Achievement Tests offered by ETS. Katzman ran Review as a sole proprietorship from 1981 until 1984, when it was incorporated in New York.

The present dispute has its genesis in events occurring a number of years ago. In 1982, ETS learned that Review had given to its enrollees copies of a "Math Level I" and of an "English Composition" Achievement test that ETS subsequently administered on November 6, 1982. Although this test was stolen from ETS, ETS does not allege that Katzman or his agents were responsible for the theft. ETS cancelled the scores of those Review students who had been given access to the stolen test.

Following these events, ETS, Katzman, and an associate not involved in this litigation entered into a written agreement in 1983 under which Katzman and his associate promised to return all copies of the purloined tests, to refrain from copying or distributing any ETS copyrighted or copyrightable materials or registering for or attending any test administered by ETS unless it was for bona fide purposes, and to notify ETS if any unlawfully obtained ETS tests came into their possession and provide ETS with information as to their source.

In its complaint in this action, ETS claims that in May 1985 (1) Katzman distributed to Review enrollees a "facsimile" "Math Level I" practice test which was "copied or paraphrased" from the same stolen test book that Review had given its students prior to the November 1982 test, and that

Katzman had promised to return, which forced ETS to provide another examination for a June 1985 exam and to retire the exam in question from use; (2) Review handed out a "facsimile" English Composition Achievement Test that contained 53 questions "obviously ... adapted directly" from the test booklet Katzman supposedly had returned earlier, forcing ETS to make a last minute substitution for an English Composition Test scheduled to be administered on June 2, 1985; and (3) Katzman and Review distributed "facsimile" SATs that contained "verbatim or nearly verbatim" SAT questions, forcing ETS to retire numerous SAT questions. ETS suggests that Review obtained these questions by having its employees register and take the SAT in violation of the 1983 agreement. ETS contends in its brief that defendants' actions have compelled it to retire from use in "secure" testing at least 289 questions, consisting of 51 Math Achievement questions, 90 English Composition Achievement Test questions, and 148 SAT questions.

ETS contends that defendants' actions constituted infringement of ETS' copyrights, breach of the 1983 agreement, and interference with "ETS' common law right to preserve the integrity of its testing program and the confidentiality of its secure tests and secure test questions." Relying on documentary evidence, it sought and was granted a temporary restraining order. The parties waived an evidentiary hearing and instead submitted affidavits. After argument, the district court granted the preliminary injunction at issue here. The court reviewed ETS' contentions and the legal standard for granting an injunction. It ruled that ETS had shown a likelihood of success, stating only:

> ETS has presented evidence which should enable it to prove an infringement by the defendants including certain copyright registration certificates. Furthermore, defendants' actions appear to have breached the 1983 Agreement between these parties.

626 F.Supp. at 528. It entered a broad preliminary injunction, discussed in more detail hereafter.

## II.

### ADEQUACY OF DISTRICT COURT'S ORDER

■ Defendants' initial challenge to the district court's order is that it fails to satisfy Federal Rules of Civil Procedure 52(a) and 65(d) which require the district court's injunctions to be accompanied by explicit findings of fact and conclusions of law. Rule 52(a) provides that

> ... in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action.

Rule 65(d) reinforces the need for specificity in this respect:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance....

According to the commentators, a principal purpose served by Rule 52(a) is insuring effective appellate review. *See* 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2576 at 695–96 (1971); 5A J. Moore & J.D. Lucas, *Moore's Federal Practice* ¶ 52.06[1] (1986). In *Professional Plan Examiners of New Jersey, Inc. v. LeFante*, 750 F.2d 282, 289 (3d Cir.1984), we stated the standard as follows:

> ... if the record does not provide a sufficient basis to ascertain the legal and factual grounds for issuing the injunction or if the findings "are inadequate to explain the basis for that ruling or to permit meaningful review" the appellate court must vacate the injunction and remand to the district court for further findings.

*See also H. Prang Trucking Co., Inc. v. Local Union No. 469*, 613 F.2d 1235 (3d Cir.1980); *Chas. Pfizer & Co., Inc. v. Zenith Laboratories, Inc.*, 339 F.2d 429 (3d Cir.1964).

This court has held that there are situations in which a party's failure to object in the district court to the court's failure to meet Rule 52(a)'s requirement of specific findings of fact and conclusions of law will have waived that party's objection. *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 206, 214–15 & n. 3 (3d Cir.1983). *But see* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2574 at 690 & n. 56 (1971). In this case, defendants do not claim that they preserved their objection in the district court to the court's failure to make specific fact findings.

While a party may waive the compliance issue, we nonetheless must examine the findings to ascertain if they are adequate to explain sufficiently the basis for the injunction so that we can perform our review function. *Professional Plan Examiners*, 750 F.2d at 289. If we determine that the district court findings are inadequate for our purposes, we may vacate the injunction and remand notwithstanding a party's waiver of its objection.

We agree with Review that the findings of facts in this case do not meet the standard imposed by Rule 52(a), since the district court never specifically found that ETS' copyrights are valid, or are likely to be so held, nor did it provide a clear factual finding to support its conclusion that ETS was likely to succeed on its contract claim. However, the parties have supplied the allegedly infringing questions and the contract at issue in the Appendix, and therefore this court, in an appropriate case, may choose to compare the materials itself. *See Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir.1975), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). However, we are not bound to do so, and reiterate the need for parties to raise their objections in the district court in the first instance and for the courts to follow the explicit requirements of Rules 52(a) and 65(d) as to fact finding before entering injunctive orders. In this case, in light of defendants' failure to object and because we are able to ascertain in a general sense what the district court appears to have found as facts, at least with respect to the copyright issue, we will not vacate

the order in toto for failure to meet the specificity requirement of Rules 52(a) and 65(d).

## III.

### THE COPYRIGHT ISSUES

#### A.

#### Likelihood of Success on the Merits

■ In seeking a preliminary injunction, it was ETS' burden to show a likelihood of success on the merits which, in a case alleging copyright infringement, requires plaintiff to show ownership of the copyright and copying by the defendant. *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904 (3d Cir.1975), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). Copyright registration is *prima facie* evidence of the validity of a copyright. 17 U.S.C. § 410(c). The presumption of copyright validity is a rebuttable one. *See* H.R. Rep. No. 1476, 94th Cong., 2d Sess. 157, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5659, 5773.

Defendants argue that ETS could not show a likelihood of success on the merits because ETS did not have a valid copyright on the material allegedly infringed. Defendants argue first that ETS' copyrights do not extend to individual questions and that the questions contain material in the public domain or that they reflect ideas and concepts that are not entitled to copyright protection. Defendants then argue that the amount of similarity between the materials at issue is de minimis or inevitable, and finally that any copying was protected by the "fair use" doctrine.

ETS holds registered copyrights for all its tests, which it registers pursuant to a regulation promulgated by the Register of Copyrights allowing for "secure test" registration. *See* 37 C.F.R. § 202.20(c)(2)(vi) (1985). A "secure test" is defined as "a nonmarketed test administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration." 37 C.F.R. § 202.20(b)(4). The regulation suspends the requirement to deposit copies of the work, and requires instead that registrants of secure tests need only deposit a sufficient portion or a description of the test sufficient to identify it. *See id.* § 202.20(c)(2)(vi). The statutory and constitutional authorization for these regulations was upheld in *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 482–87 (7th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), and is not challenged in this case.

Using the procedure established by this regulation, representatives of the Copyright Office examined ETS' tests and then returned them. ETS deposited only the front and back covers of its tests.

Review argues that because ETS' copyrights were for "compilations", there is no copyright protection for any particular individual question. The copyright statute expressly extends copyright protection to compilations, 17 U.S.C. § 103(a), defined as works

> formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

17 U.S.C. § 101. This provision gives protection to novel arrangements of materials that could not otherwise be copyrighted. For example, copyright for a telephone book as an original compilation has been upheld even though the addresses themselves could not be protected. *See Northwestern Bell Telephone Co. v. Bedco of Minnesota, Inc.*, 501 F.Supp. 299, 301–02 (D.Minn.1980); *see also Grolier, Inc. v. Educational Reading Aids Corp.*, 417 F.Supp. 665, 667–68 (S.D.N.Y.1976) (original compilation of children's reading materials).

The fact that a registrant denominates the material as a compilation does not in itself signify that the constituent material is not also covered by the copyright. In

fact, the statutory premise that the copyright in a compilation extends to the constituent material contributed by the author is express, since the statute provides

> (b) *The copyright* in a compilation or derivative work *extends* only *to the material contributed by the author* of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

17 U.S.C. § 103 (emphasis added). ETS' copyright registrations state that the "entire text" is authored by ETS. *See, e.g.,* App. at 210, 212. It designated the material as "Compilations" on the registration form because it was recompiling old questions in new form.

Although compilations or "collective" works may include uncopyrightable works, as well as previously copyrighted works, the fact that the registration was for compilations does not preclude protection for the material therein contributed by the author. Thus, we hold that if the questions are copyrightable, then ETS' registrations of the tests as compilations covered the questions.

■ Defendants' other objection to ETS' copyright is their claim that the material is in the public domain and that in entering the injunction, the district court accorded protection to ideas, which the Copyright Act does not protect, *see* 17 U.S.C. 102(b), rather than expressions of ideas, which are protected. This argument is unpersuasive. ETS' questions are "original works of authorship" within the meaning of the copyright laws. 17 U.S.C. § 102(a). *See Association of American Medical Colleges v. Mikaelian,* 571 F.Supp. 144, 150 (E.D.Pa. 1983) (medical school admission test), *aff'd,* 734 F.2d 3 (3d Cir.1984); *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 495 F.Supp. 34, 36 (N.D. Ill.1980) (bar examination), *aff'd in part,*

*rev'd in part,* 692 F.2d 478 (7th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

■ Defendants argue that the principle of merger between the idea and expression is applicable in this case because the idea or subject of the material at issue can be expressed only in a limited number of ways. The merger principle, when raised legitimately, is a variation of the idea/expression dichotomy that we analyzed in *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1252–54 (3d Cir.1983), *cert. dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). When the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying "art". *See* M.B. Nimmer, *Nimmer on Copyright* § 2.18[c] at 2–202 to –204 (1985). As we stated in *Apple Computer,* an expression will be found to be merged into the idea when "there are no or few other ways of expressing a particular idea." 714 F.2d at 1253. *See also Sid & Marty Krofft Television Products, Inc. v. McDonalds Corp.,* 562 F.2d 1157, 1167–68 (9th Cir.1977). It is on the basis of the merger principle that copyright has been denied to utilitarian ideas, such as forms. *Brown Instrument Co. v. Warner,* 161 F.2d 910 (D.C.Cir.1947), *cert. denied,* 332 U.S. 801, 68 S.Ct. 101, 92 L.Ed. 380 (1947); *M.M. Business Forms Corp. v. Uarco,* 472 F.2d 1137 (6th Cir.1973).

However, in *Apple* we explained that "if the same idea can be expressed in a plurality of totally different manners, a plurality of copyrights may result." 714 F.2d at 1253 (quoting *Dymow v. Bolton,* 11 F.2d 690, 691 (2d Cir.1926)). While the limited number of ways a concept can be addressed may be relevant to the extent of copying permitted, it does not render an original expression per se incapable of copyright protection. As we stated in *Apple Computer,* "If other methods of expressing that idea are not foreclosed as a practical matter, then there is no merger." 714 F.2d at 1253.

We need not define the limits of the merger principle in this case. It is apparent on the face of the materials that ETS' questions do not represent the only means of expressing the ideas thereon. We are, quite frankly, unpersuaded that the number of questions that can be devised to test students on their knowledge of square roots or dangling participles is so limited that ETS' questions designed for this purpose represent a merger with the underlying ideas. Although ETS cannot appropriate concepts such as rules of punctuation, analogies, vocabulary or other fundamental elements of English composition, it can, using its own resources, devise questions designed to test these concepts and secure valid copyrights on these questions. Other persons, similarly resourceful, have ample latitude and opportunity to frame noninfringing questions testing the same subjects. Thus, we reject defendants' attack on ETS' copyright on the ground of merger.

■ Defendants also make a related argument based on ETS' domination of the field of college testing, contending that anyone who wishes to prepare students for ETS' exams must use questions that are "methodologically similar" to ETS' questions. Appellants' brief at 21. The cases on which defendants rely for this argument do not support the breadth of their argument. In *McGraw-Hill, Inc. v. Worth Publishers, Inc.*, 335 F.Supp. 415, 421 (S.D.N.Y.1971), the district court found that the economics textbook claimed to infringe another did not. In its discussion, the court observed that the leading economics text authored by Professor Samuelson had molded the field of economics teaching, and had become the model for succeeding tests. Moreover, there was a common corpus of jargon, technical words and phrases whose meanings were fixed and concepts, such as macroeconomics and microeconomics, which explained many of the similarities.

The second case cited by defendants, *Kepner-Tregoe, Inc. v. Carabio*, 203 U.S. P.Q. (BNA) 124 (E.D.Mich.1979), involved a copyright on teaching materials for "management training programs," a field the court believed plaintiff dominated. Although the "dominance" was relevant to the "thinness" of the copyright, in effect the court merely was applying the accepted idea/expression dichotomy in holding that plaintiff could not appropriate for its exclusive use the method of teaching the program.

Neither case suggests that copying or appropriation of copyrighted material can be excused because the copyright registrant is "dominant" in the field. Nor are we sympathetic to any argument that because a review course is designed to "coach" students to take an ETS test, ETS loses a measure of its copyright protection. In effect, defendants' argument, if accepted to its logical conclusion, would nullify ETS' "exclusive" right under the Copyright Act "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2). ETS' possible domination in the field of college testing, an issue on which there is no district court finding of fact, cannot excuse copying of its registered material, and patently does not affect the validity of ETS' copyright. Thus, we conclude that the record before the district court supported the underlying premise that ETS had valid copyright registrations on the material at issue.

■ Since copying is an essential element of copyright infringement, ETS must also show that it is likely to prevail on this allegation as well. The May 1983 agreement waived ETS' rights with respect to the alleged 1982 copying by Katzman and Review, then a sole proprietorship, and preserved only ETS' claim for action in the event of a "material breach". We read ETS' allegation of copying in this case as directed to defendants' actions in May or June 1985, when Review prepared its "facsimile" tests. Although ETS claims that many of defendants' questions were copied verbatim, the record shows only rare instances of technically verbatim copying. However, ETS relies on the substantial similarity between its questions and those used by defendants to show copying.

A finding of substantial similarity is an ad hoc determination. *See Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960). We apply the reasonable person standard, under which

the test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.

*Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982); *accord Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir. 1975), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

This case does not present the exact duplication between copyrighted test questions for medical school admission and those used by a different coaching business that was before the court in *Association of American Medical Colleges v. Mikaelian*, 571 F.Supp. 144 (E.D.Pa.1983). There, the defendant's "facsimile" was an exact image of plaintiff's examination down to typeface and errors, *id.* at 148, and the court found that such similarities could only be explained by copying. *Id.* at 151.

Nonetheless, our examination discloses that at least some of Review's questions are so strikingly similar to those prepared by ETS as to lead to no other conclusion than that they were copied. For example, several of Review's math questions duplicate ETS' except for a change in the variables used. One example from the Math Level I Achievement Test will suffice:

| *ETS Question* | *Review Question* |
|---|---|
| If $\dfrac{x}{3} = 3$, then $\dfrac{\sqrt{x}}{3} =$ | If $\dfrac{x}{4} = 4$, then $\dfrac{\sqrt{x}}{4} =$ |
| (A) ⅓ (B) 1 (C) 3 | (A) ¼ (B) 1 (C) 4 |
| (D) 9 (E) 27 | (D) 16 (E) 64 |

Other math questions were similarly altered merely by substituting different values for the numbers in ETS' equations, or making other minor alterations.

It is also evident that the Review's "facsimile" used questions copied from the ETS' SAT questions:

| *SAT Question* | *Princeton Review*<br>*"Facsimile"* |
|---|---|
| 9. REPROBATE: (A) predecessor (B) antagonist (C) virtuous person (D) temporary ruler (E) strict supervisor | 9. REPROBATE: (A) antagonist (B) predecessor (C) virtuous person (D) temporary ruler (E) strict supervisor |

App. at 414.

\* \* \*

| | |
|---|---|
| 17. CONVEYOR BELT: PACKAGES::<br>(A) forklift:warehouse<br>(B) crane:ships<br>(C) escalator:people<br>(D) elevator:penthouse<br>(E) scaffold:ropes | 17. CONVEYOR BELT: PACKAGES::<br>(A) crane:ships (B) forklift:<br>warehouse (C) escalator:people<br>(D) parachute:airplane (E)<br>scaffold:ropes |

App. at 415.

In some of the other questions used by defendants and identified by ETS as infringing, the copying is not apparent, at least without more explanation than appears on this record. For example, ETS claims infringement in the following pair of questions:

| ETS Question | Review Question |
|---|---|
| Even though history does not actually <u>A</u> | President Carter <u>felt that,</u> <br> A |
| repeat itself, knowledge <u>of</u> history <br> B | <u>by announcing</u> all his <br> B |
| <u>can give</u> current problems a familiar, <br> C | decisions while wearing a |
| <u>less</u> formidable look. <u>No error</u> <br> D E | cardigan sweater, he <u>would give</u> <br> C |
| | his presidency a friendly, <u>less</u> <br> D |
| | formidable image. <u>No error</u> <br> E |

App. at 409; *see* App. at 46. The substantial similarity between Review's question and ETS' question, which was designed to test whether the applicant knew that there was no grammatical error, eludes us.

We recognize that even in the absence of closely similar language, courts have found copyright infringement on the basis of "recognizable paraphrases". In *Meredith Corp. v. Harper & Row, Publishers, Inc.*, 378 F.Supp. 686 (S.D.N.Y.1974), *aff'd*, 500 F.2d 1221 (2d Cir.1974), the district court found the text of the infringing textbook to be a paraphrase of the other, and hence an infringement. *See also Consolidated Music Publishers, Inc. v. Hansen Publishers, Inc.*, 339 F.Supp. 1161 (S.D.N.Y.1972).

ETS apparently believes the "recognizable paraphrasing" cases apply to the illustration set forth immediately above. However, in both of the cited cases, there was a striking similarity between the two works. Here, there is nothing comparable. ETS complains that some of defendants' questions copy both the structure and wording of its questions, testing the same points in the same order. We have already sustained its contention with regard to the use of the same wording or substantially similar wording. On the other hand, its claim with respect to the use of the same structure sweeps too broadly. We are not convinced that ETS' copyright in the text of a question precludes a coaching school from testing the same concept in the same order, as long as it does not use the same or substantially similar language. In any event, it is an issue on which more specific

district court's findings, based on an adequate record, are essential. However, since the record adequately supports ETS' contention of copying based on nearly verbatim or substantially similar questions, the fact that some questions referred to by ETS may not be infringing does not affect its substantial likelihood of success on the merits.

Defendants argue that any copying was de minimis, contending, "At best, what ETS has claimed is that a handful of questions out of thousands that ETS has generated has been copied." Brief of Defendants-Appellants at 25. Last term, the Supreme Court rejected a claim that the copying of 300 to 400 words of a copyrighted book was insubstantial and constituted fair use of the material. *Harper & Row, Publishers, Inc. v. Nation Enterprises,* —— U.S. ——, 105 S.Ct. 2218, 2233–34 & 2233 n. 8, 85 L.Ed.2d 588 (1985). Instead, the Court looked to the "qualitative value of the copied material, both to the originator and to the plagiarist." *Id.*, 105 S.Ct. at 2233.

ETS produced evidence by affidavit that the integrity of its test scores is vital to the college admissions process, that defendants' copying compromised its test forms, and that because advance exposure to some questions may give students an unfair advantage, it was required to use new forms in June 1985 as a result of defendants' actions. The qualitative significance of defendants' actions has been satisfactorily es-

tablished for purposes of a preliminary injunction.

■ We are also unpersuaded by defendants' argument that the teaching instruction offered by Review makes "fair use" of ETS' questions. The Copyright Act protects "fair use ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research...." 17 U.S.C. § 107. It specifies four factors for the court to consider in determining whether a use is fair:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

In *Association of American Medical Colleges v. Mikaelian*, 571 F.Supp. at 151–52, Judge Broderick rejected the argument that the defendant, who operated a course very much like Review's, fit into the category of teaching for purposes of the fair use defense. The court reasoned:

> To be sure, Mikaelian and Multiprep give test preparation courses, and provide instruction in test preparation as part of these courses. However, Multiprep students do not receive a degree, do not become qualified or certified in anything after taking the course, and may not use the course as a prerequisite for further education and training in any educational or vocational endeavor.

*Id.* at 152.

Even assuming that Review's courses qualify as teaching within the meaning of the statute, after consideration of the statutory factors, we cannot find that its showing on the issue of fair use in this record is so strong as to require us to overturn the trial court's finding of likelihood of success on the merits. The first factor of "the

purpose and character of the use" is intended to favor noncommercial and productive uses. *See Harper & Row, Publishers, Inc. v. Nation Enterprises*, 105 S.Ct. at 2231. Review's use is highly commercial.

With respect to the second factor, "the nature of the copyrighted work", the unique nature of secure tests means that any use is destructive of ETS' rights. As stated in *Mikaelian*, "The very purpose of copyrighting the ... questions is to prevent their use as teaching aids, since such use would confer an unfair advantage to those taking a test preparation course." 571 F.Supp. at 153.

In its interpretation of the third factor, "the amount and substantiality of the portion used," the Supreme Court in *Harper & Row* upheld the district court's finding that copying of 300 words from a book-length manuscript was substantial because defendant copied "the heart" of the book. *See Harper & Row*, 105 S.Ct. at 2233. While the copying shown on the record to date in this case cannot be so characterized, neither can we regard it as insubstantial.

Finally, the fourth factor, "effect ... upon the potential market," seems dispositively in favor of ETS. Although Review asserts that it is not in competition with ETS, use of ETS' materials by Review renders the materials worthless to ETS. *See Mikaelian*, 571 F.Supp. at 153.

Thus, although we remain very concerned about the district court's action in issuing an injunction without making the requisite fact finding, we believe that the record before us is sufficient for the purpose of concluding that there was some copying by defendants of ETS' copyrighted material, and that defendants have not shown that such copying was permissible under the doctrines they invoke. We will not disturb the district court's finding that there was a likelihood of success on the merits in the copyright infringement claim.

## B.

### *Irreparable Harm*

■ In this circuit, a *prima facie* showing of copyright infringement creates

a rebuttable presumption of irreparable harm. *See Apple Computer,* 714 F.2d at 1254. In this case, the district court noted this rule, and held that ETS would suffer irreparable harm because its testing program for last fall would be "severely disrupted". According to the district court:

> Such disclosure [of ETS' tests] could result in invalidation of certain test scores and thereby undermine the integrity and reputation of ETS and its tests in the eyes of colleges and students.

626 F.Supp. at 529. Defendants have made no attempt to explain why this presumption should not apply here.

Furthermore, even without the aid of such a presumption, ETS has made a sufficient showing of harm. Although ETS has retired two of the tests Review allegedly copied, there were 11 Achievement tests in the test booklet Katzman acquired in 1982. Moreover, as in *Apple,* ETS would suffer damage to its investment, and its test questions are "central to the essence of plaintiff's operations." *Apple,* 714 F.2d at 1254. Indeed, test questions are ETS' operation. In this case, there was "adequate evidence of the expenditure of significant time, effort and money directed to the production of the copyrighted material." *Id.* Moreover, there was ample evidence of the effort ETS must undertake when secure questions have been misappropriated, and the inconvenience caused thereby to support the finding of irreparable harm.

## C.

### *Scope of the Injunction*

■ Once ETS bore its burden of showing that it was likely to succeed on the merits and that it did suffer irreparable harm because of the copyright infringement, it was entitled to a preliminary injunction.[2] Paragraph 1 of the preliminary injunction, which we interpret as directed to the copyright infringement, enjoins Katzman and Review and their respective agents, servants, employees, and all other persons acting in concert with them from:

> copying, duplicating, distributing, selling, *adapting,* publishing, reproducing, renting, leasing, offering or otherwise transferring or communicating in any manner, orally or in written, printed, photographic or other form, including any communication in any class or other presentation, any questions, or *any other information* obtained directly from any of Educational Testing Service's copyrighted secure tests.

626 F.Supp. at 529 (emphasis added). Much of the defendants' argument on appeal is directed to what they claim is the "broad scope of the language of paragraph (1) of the order [which] prohibits Review even from 'adapting' in any form 'information' contained in ETS' 'copyrighted secure tests.'" Brief of Defendants-Appellants at 6.

Although preliminary injunctions are "intended to meet exigent circumstances and at times may lack the precision of final decrees," the injunction must give the affected party "fair and precisely drawn notice of what the injunction actually prohibits." *Ideal Toy Corp. v. Plawner Toy Manufacturing Corp.,* 685 F.2d 78, 84 (3d Cir.1982) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 444, 94 S.Ct. 1113, 1126, 39 L.Ed.2d 435 (1974)). Rule 65(d) requires that every order granting an injunction "shall be specific in terms"; and "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed.R. Civ.P. 65(d). "The specificity requirements of Rule 65(d) are based on three considerations: 'to prevent uncertainty and confusion on the part of those faced with injunc-

---

**2.** In deciding whether to grant or deny a preliminary injunction, the district court should also consider "the possibility of harm to other interested persons ..., and ... the public interest." In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir.1982). In this case, the district court expressly considered the effect of the injunction on students who have had defendants' course and those who have not. The court also considered the public interest in the "integrity of a testing system which is integral to college admissions." 626 F.Supp. at 529. Defendants do not challenge these conclusions on appeal.

tive orders, ... to avoid the possible founding of a contempt citation on a decree too vague to be understood ... [and] for an appellate tribunal to know precisely what it is reviewing.'" *Ideal Toy,* 685 F.2d at 83 (quoting *Schmidt v. Lessard,* 414 U.S. 473, 476–77, 94 S.Ct. 713, 715–16, 38 L.Ed.2d 661 (1974) (per curiam)).

An injunction must not only meet the specificity requirement set forth in Rule 65(d), it also cannot be broader than necessary to restrain the unlawful conduct. *NAACP v. Claiborne Hardware Company,* 458 U.S. 886, 924 & n. 67, 102 S.Ct. 3409, 3431 & n. 67, 73 L.Ed.2d 1215 (1982). We agree with the defendants that a portion of paragraph 1 of the injunction fails to meet these standards. The inclusion of the prohibition of use of "information", even if limited to "information obtained directly from" ETS' tests, is broader than the scope of the copyright laws which, as we noted above, do not protect ideas but only the expression of such ideas. Furthermore, since "adapting" ETS' materials may encompass permissible use of ETS' material, the preclusion of "adapting" such material suffers from the same defect. The use of the word "adapting" also fails to provide the specific guidelines for enjoined activity required by Rule 65(d).

The Supreme Court has emphasized that the specificity provisions of Rule 65(d) are *no mere technical* requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid

the possible founding of a contempt citation on a decree too vague to be understood.

*Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974) (per curiam) (emphasis added). Katzman and Review are not told precisely what it is they may not do, nor could this court on review from a possible contempt citation ascertain from the face of the injunction what conduct was encompassed.

Although district courts have considerable discretion in framing injunctions, *see Ameron, Inc. v. United States Army Corps of Engineers,* 787 F.2d 875, 887 (3d Cir.1986), when an injunction grants relief broader than that to which the party is entitled, we are free to modify it. *Id.* at 890. Accordingly, we will affirm paragraph 1 of the injunction except that we will excise the words "adapting" and "or any other information."

## IV.

### THE CONTRACT ISSUE

 The preliminary injunction entered in this case goes far beyond the copyright issue. It enjoins defendants and their agents from attending any ETS administered test, except for bona fide purposes, and, even then, from "disclosing any information regarding a secure test question." It also enjoins defendants from altering, disposing of and taking certain other action with respect to any ETS secure test, a specifically designated Achievement test, and documents identifying Review's enrollees.[3] 626 F.Supp. at 529. We assume these

---

**3.** The preliminary injunction order enjoined defendants and their agents from:

(2) registering for and attending as a test candidate or otherwise any administration of any Educational Testing Service test, except for bona fide purposes of admission or licensure, and, as to any such person attending an Educational Testing Service test for such bona fide purposes, from disclosing any information regarding a secure test question to the defendants, their officers, agents, representatives, employees, servants, persons who take their coaching courses, and all persons acting in concert with any of the defendants;

(3) attending any administration of any Educational Testing Service test as a proctor, supervisor, or other test center employee; and

(4) altering, modifying, mutilating, removing, storing, secreting, tampering with, destroying or otherwise disposing of (A) any test forms or other materials that contain any questions that is a copy of or derived from any secure test questions contained in an Educational Testing Service copyrighted secure test; (B) any copies of Achievement Test book 3DCB3; and (C) any documents, writing or other materials identifying for the period December 1, 1984 to July 30, 1985, any persons who were enrolled in the coaching courses of defendants, and the dates of their enrollment.
626 F.Supp. at 529.

activities were enjoined pursuant to the district court's conclusion that "defendants actions appear to have breached the 1983 Agreement between the parties." *Id.* at 328. The only other reference to ETS' claim of breach of the 1983 contract entered into by Katzman and an associate, Robinson, is the court's conclusion that "Based on the information provided thus far it appears that ETS is likely to prevail on the merits of its ... contract claim[.]" *Id.*

Unlike the copyright claim, the state of the record and the issues raised by the parties with respect to the contract claim make meaningful appellate review of these conclusions impossible without the specific findings of fact required by Rule 52(a). For example, Review is not a party to the contract and contends it is not bound. ETS counters by pointing to a letter dated August 22, 1984, apparently after Princeton Review, Inc. was incorporated, in which counsel for Review responded to charges by ETS by stating that "Princeton Review does intend to abide by its agreement with ETS on the matter" of not allowing its employees to take ETS' exams. *See* App. at 75–76.

We do not know whether the district court was relying on this letter, which it did not mention, to support its injunction as to Review on the ground that it had adopted the contract or whether it accepted what appears to be another ETS argument that the corporate Review is bound as a matter of law as a successor to the unincorporated Review. Presumably, ETS views the unincorporated Review as being bound to the contract signed by its owner even though the unincorporated Review was not named therein, but again we do not know the manner in which the district court resolved this issue. Even if Katzman is president and sole shareholder of Review, this alone may not establish that the incorporated Review is liable on Katzman's contract. Furthermore, it is not at all clear whether the district court believed this was an appropriate case to disregard the corporate separateness of Review, and if so, why.

Finally, there are numerous other unresolved factual and legal issues surrounding the alleged breach, such as whether an unsuccessful effort by Katzman to take one of ETS' tests, even if proven, would be a breach of the contract term forbidding him from "attend[ing]" any administration of any ETS' test. Nor has the district court made any findings on the relationship between these defendants and the two individuals ETS contends took one or more of its tests on defendants' behalf. Also at issue is defendants' responsibility for the actions of those individuals who submitted affidavits that Katzman urged them not to take ETS' tests. Our need for the findings required by Rule 52(a) is not any less because the parties submitted the preliminary injunction issue on the basis of affidavits rather than live testimony.

Our opinion in *Danny Kresky Enterprises Corp. v. Magid,* 716 F.2d at 214–15, cannot be read as authorizing disregard of what we recognized was the mandatory requirement of Rule 52(a) for specific findings of fact and conclusions of law. In the particular circumstances of that case, where there had been a jury finding of a conspiracy to violate the antitrust laws, which was amply supported by the evidence, and the district court had entered a permanent injunction restraining defendants from conspiring in the manner and for the purpose charged, we did not need any further specificity since both the factual and legal premise for the injunction were evident. It is on a similar basis that we can affirm, for the most part, paragraph 1 of the preliminary injunction entered here, because the factual and legal predicate for the district court's ruling on the copyright issue is similarly clear. *See also Berguido v. Eastern Air Lines, Inc.,* 369 F.2d 874, 877 (3d Cir.1966), *cert. denied,* 390 U.S. 996, 88 S.Ct. 1194, 20 L.Ed.2d 95 (1968) ("[t]he basis of the Court's ruling is clear").

On the other hand, our precedent clearly requires that when the findings are inadequate to explain the basis for the district court's ruling or permit meaningful review, we "must vacate the injunction and remand to the district court for further findings." *Professional Plan Examiners of New Jersey, Inc. v. LeFante,* 750 F.2d at 289. Even though there may be facts on record

that would support district court findings to support a preliminary injunction, had they been made, we are not free to leave the injunction in effect until such findings are made, since such a course would subvert the congressional purpose of affording prompt review of preliminary injunction orders expressed in 28 U.S.C. § 1292(a).

In short, while we venture no opinion on the ultimate merits of ETS' claim of breach of contract, the absence of any findings on that issue precludes meaningful review of the district court's conclusion in that respect. Therefore, we will vacate the district court's entry of paragraphs 2, 3, and 4 of the preliminary injunction order.

## V.

### CONCLUSION

For the reasons set forth above, we will affirm the entry of paragraph 1 of the injunction except insofar as it contains the words "adapting" and "any other information," and will vacate paragraphs 2, 3, and 4 of the injunction. Costs will be divided equally between appellants and appellees.

Mansmann, Circuit Judge, dissented with opinion.