

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-20-2002

# R&B Inc v. Needa Part Mfg Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3411

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"R&B Inc v. Needa Part Mfg Inc" (2002). *2002 Decisions.* Paper 523.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/523

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 01-3411

———————

R&B, INC.,

Appellant

v.

NEEDA PARTS MANUFACTURING, INC.;
JAMES KOLESZAR

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA

(Dist. Court No. 01-cv-01234)
District Court Judge: Honorable Mary A. McLaughlin

———————

Argued: July 15, 2002

Before: SCIRICA, ALITO, and FUENTES, Circuit Judges

(Opinion Filed: August 20, 2002)

ANTHONY S. VOLPE (argued)
JOHN J. O'MALLEY
Volpe & Koenig, P.C.
Suite 400, One Penn Center
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103

*Counsel for Appellant*

ANTHONY R. SHERR (argued)
3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440

*Counsel for Appellees*

MARC L. FLEISCHAKER
ELIZABETH H. COHEN
Arent Fox Kintner Plotkin & Kahn, PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339

*Counsel for Amicus Curiae Motor &
Equipment Manufacturers Association*

---

## OPINION OF THE COURT

---

PER CURIAM:

This is an appeal from the District Court's denial of a preliminary injunction. Because we write for the parties only, we do not set out the background of this case.[1]

R&B challenges the denial of the preliminary injunction on primarily two grounds.  First, R&B argues that its part numbers satisfy the requirements for copyright

---

[1] "We review the District Court's order denying a preliminary injunction under an abuse of discretion standard, its factual findings under a clear error standard, and its findings of law under a de novo standard." Rose Art Industries, Inc. v. Swanson, 235 F.3d 165, 170-71 (3d Cir. 1999).  Because the decision to enter a preliminary injunction is committed to the sound discretion of the trial court, we will reverse such a decision "only if the court abused its discretion, committed an obvious error in applying the law, or made a serious mistake in considering the proof." Loretangeli v. Critelli, 853 F.2d 186, 193 (3d Cir. 1988).

protection and that its copyrighted catalogue was infringed by Needa such that it showed a likelihood of success on the merits of its copyright infringement claim. Second, R&B argues that there is a likelihood of confusion between the Need! and Needa? marks such that R&B showed a likelihood of success on the merits of its trademark infringement claim.

I.

When seeking this preliminary injunction, it was R&B's burden to show a likelihood of success on the merits. In a case alleging copyright infringement, this requires a plaintiff to show ownership of the copyright and copying by the defendant. See Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222, 1231 (3d Cir. 1986). The first issue raised in this appeal is whether R&B's part numbers meet the requirements for copyright protection.

We recently held in a case very similar to the one at bar that the "modicum of creativity" requirement for copyright protection is not met where a manufacturer simply assigns numbers to parts in a mechanical systematic fashion. See Southco, Inc. v. Kanebridge Corp., 258 F.3d 148 (3d Cir. 2001). In Southco, we reversed the grant of a preliminary injunction on a copyright infringement claim involving part numbers for various types of captive screw fasteners. Id. at 149. There, Southco had developed a numbering system to identify its fasteners, whereby each fastener was assigned a unique nine-digit number, with each digit describing a specific physical parameter of the fastener. Id. The defendant sold competing fasteners using Southco's part numbers. We

3

distinguished between the actual part numbers and the numbering system itself and decided the case based only on the issue of whether the part numbers themselves were copyrightable. We held that Southco's part numbers were completely devoid of originality because they merely resulted from "the mechanical application of the numbering system." Id. at 152. We noted that Southco had "devoted time, effort, and thought to the creation of the numbering system" but that the very existence of the system "ma[de] it impossible for the numbers themselves to be original." Id. at 153. Under the system, there was no room for creativity when assigning a number to a new panel fastener because there was only one possible part number for any new panel fastener that Southco created. Id.

Applying our decision in Southco, the District Court in this case held that R&B's part numbers do not satisfy the originality requirement of copyright law. It is important to note that the District Court's opinion here distinguished between the part numbers themselves and the part numbering *system*. Dist Ct. Op. at 20. Even though R&B in its oral and written arguments before that court used the two terms interchangeably, the District Court determined that there was no evidence that Needa used the part numbering *system* to assign a new number to a new part that it had created. Id. The only claim was that Needa copied R&B's part numbers. Id. Thus, the District Court ruled only on the claim with respect to the part numbers themselves. Id. Although the District Court found that R&B's numbering system is not as fully developed and predictable as Southco's system was, it found that R&B's system was similar enough that the part numbers were uncopyrightable under the Southco decision. Id. at 23.

4

Because we agree with the District Court that R&B's part numbers are not materially different from the part numbers at issue in <u>Southco</u>, we affirm the District Court's denial of a preliminary injunction on the copyright infringement claim with respect to the alleged copying of R&B's part numbers.

II.

Plaintiff's second copyright claim focuses on R&B's catalogues. R&B claims that Needa infringed the copyright in its 1994 catalogue. Needa admits to using the plaintiff's catalogue for research but denies copying it. The issue before us is whether R&B showed a likelihood of success on the merits of the copyright infringement claim with regard to its 1994 catalogue such that a preliminary injunction should have been issued.

Responding to Needa's first argument -- that R&B did not have a valid copyright in the catalog -- the District Court assumed for purposes of the motion that the Copyright Office had received the plaintiff's application for a copyright in the 1994 catalogue -- which was submitted to the Copyright Office after the complaint was filed -- and that the certificate of registration was forthcoming. Dist Ct. Op. at 29. On the second issue of infringement of the catalogue, the District Court properly identified the two-part test for "substantial similarity", namely: (1) the extrinsic test -- whether there is sufficient similarity between the two works to conclude that the defendants used the copyrighted work in making their own; and (2) the intrinsic test -- whether there was an illicit or unlawful appropriation of the copyrighted work. In making the first determination, expert

5

testimony and a visual comparison between the copyrighted work and the allegedly infringing work are frequently utilized. See 511 F.2d at 907. The second determination is made from the perspective of a lay person. See id. The District Court agreed with Needa that Needa's catalogue was not substantially similar to R&B's catalogue, citing the following: (1) the plaintiff's catalogue consists of 685 pages whereas the defendant's catalogue consists of only 85; (2) the catalogues differ in artwork, layout, text, and photography; and (3) the part numbers are similar to the plaintiff's part numbers, but that the part numbers were a *de minimis* portion of the catalogues as a whole. Id. at 30-31. Therefore, the District Court held that the plaintiff had failed to establish either of its copyright claims.

The main issue before us is that of "substantial similarity." The plaintiff disagrees with the District Court's conclusion that the copying of part numbers from R&B's catalogue was *de minimis*. The District Court found the part numbers copied were a *de minimis* part of the catalogue as a whole because Needa's part numbers constituted less than 6% of R&B's part numbers under the MOTORMITE brand (Needa took 1,000 part numbers out of R&B's 18,000 MOTORMITE part numbers). The plaintiff explains that Needa took only the best moving parts from the R&B MOTORMITE product line and that under the qualitative value test adopted by the Supreme Court in Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 565 n. 8 (1985), Needa infringed its copyright by taking virtually all of the valuable protected matter. R&B cites our decision in Educational Testing Services v. Katzman, 793 F.2d 533, 542 (3d Cir. 1986), where we found the

6

substantial similarity test satisfied where only a handful of questions out of thousands had been copied. R&B argues that the qualitative test is the appropriate test to apply, that the qualitative value of R&B's part numbers is high, and that Needa acknowledges as much when it admitted copying the work in order to "make it easy for the customers to change over from MOTORMITE to Needa."

Based on the analysis set forth below, we find that the District Court was correct that the plaintiffs did not show a likelihood of success on the merits of their catalogue claim, but for different reasons than those identified by the District Court. The District Court was incorrect to use the *de minimis* quantitative standard, rather than the qualitative standard set out by the Supreme Court in Harper & Row, but ultimately this does not entitle the plaintiff to a preliminary injunction. The plaintiff has not shown that the substantial similarity between the parts copied and the catalogue were of *copyrightable information* and, therefore, their infringement claim could not have been successful on the merits.

A leading treatise states that catalogues constitute "compilations" as that term is defined in the Copyright Act. Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2.04[B], at 2-46 (2002) ("Nimmer"). The Copyright Act defines "compilations" as "a work formed by the collection and assembling of pre-existing materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. . ." Id. at n.11 (quoting 17 U.S.C. § 101). The treatise continues:

7

> A work will constitute a compilation "regardless of whether the individual items in the material have been or ever could have been subject to copyright." . . . [E]ven if a compilation consists merely of a selection or arrangement of "facts" that individually would not be copyrightable, the originality involved in the selection and/or arrangement of such facts is sufficient to constitute the resulting compilation a protectable literary work. Note that the requisite originality may inhere in selection and arrangement alone, even if the other ingredient is lacking. In such circumstances, however, protection is concomitantly narrow; thus, a work that is copyrightable solely by virtue of its selection is not infringed by another highly similar work, if the latter does not closely follow the former in terms of selection of the data.

Id. at 2-46. Indeed, section 103 of the Copyright Act states that "the copyright in a compilation . . . extends only to the material contributed by the author of such work . . . . The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." 17 U.S.C. § 103.

The scope of protection for a compilation extends only to "those elements contained therein that are original with the copyright claimant." Nimmer, § 3.04[A]. Therefore, according to Nimmer, a copyright over a compilation "does not *per se* render protectable the pre-existing or underlying work upon which the later work [compilation] is based." Id. Indeed, we have agreed that a compilation may be copyrightable when the facts contained therein are not necessarily themselves copyrightable. See ETS, 793 F.2d at 538 (section 103(a) of the Copyright Act expressly extends copyright protection to compilations, such that a copyright for a telephone book as an original compilation has been upheld even though the addresses contained therein could not be protected).

To say that uncopyrightable part numbers do not transform into copyrightable

8

entities merely because they are listed in a copyrightable work is not necessarily to say that the copying of these numbers from a catalogue does not constitute infringement of the catalogue itself. The question whether a catalogue or compilation can be infringed when the taking is of uncopyrightable information, here the part numbers, was not addressed in the parties' briefs or in oral argument.

Nimmer states on this issue that the substantial similarity test must be analyzed with reference to copied portions that are themselves worthy of protection under copyright law:

> Even when extended similarity exists between plaintiff's and defendant's works when taken as a whole, the analysis is not finished. To the extent that such similarity inheres in ideas, which are by definition unprotected, or in expression that is not proprietary to plaintiff, then an essential ingredient is lacking from plaintiff's prima facie case . . . . [A]n essential element of an infringement case is that "plaintiff must show that defendant's works are substantially similar to elements of plaintiff's work that are copyrightable or protected by the copyright."

Nimmer, § 13.03[B][2], at 13-59. This is precisely why this case differs from our decision in ETS. In ETS, we held that if the individual ETS multiple choice questions were copyrightable, then ETS' registrations of the tests as compilations covered the questions. 793 F.2d at 539. But, in ETS we held that the individual questions were "original works of authorship" within the meaning of the copyright laws. Id. This case is different from ETS because the part numbers are not copyrightable under our decision in Southco. As such, ETS is of doubtful help to the plaintiff. At the present stage of this litigation, the issue need not be definitively resolved. It is sufficient that we are convinced that the plaintiff has

9

not shown a likelihood of success. Therefore, the motion for preliminary injunction for the alleged copyright infringement of R&B's catalogue was appropriately denied.

III.

It was R&B's burden, when seeking this preliminary injunction, to show a likelihood of success on the merits, which in a case alleging trademark infringement, requires a showing that (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the mark is likely to cause confusion concerning the origin of the goods and services. See Optician Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990). The third issue on appeal relates to whether Needa has infringed R&B's rights in four R&B trademarks.

The District Court concluded that R&B failed to show a likelihood of success on the merits of its trademark claims. Beginning with the registered marks, the District Court found that Needa had never used the MOTORMITE mark and therefore R&B's claim could not succeed. On the "Need!" mark, the District Court disagreed with the defendant's abandonment argument, but nevertheless held that there was no likelihood of confusion between the Needa? and NEED! marks. Moving to the unregistered marks, the District Court found that the "MM" mark had not developed a secondary meaning that would give the unregistered mark validity and that R&B had not shown any evidence of likelihood of confusion. On the unregistered part numbers, the District Court held that R&B did not prove that the part numbers are validly trademarked works because there was insufficient evidence of secondary meaning. On the repackaging claim, the District Court

10

found that R&B did not show that Needa's repackaging involved any of R&B's trademarks and as such did not carry its burden with respect to this claim.

In Interpace Corp. v. Lapp, Inc., 721 F.2d 460 (3d Cir. 1983), we set out 10 factors to be considered in determining likelihood of confusion:

> (1) the degree of similarity between the marks;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;
> (5) the intent of the defendant in adopting the mark;
> (6) the evidence of actual confusion;
> (7) whether the goods . . . are marketed through the same channels of trade and advertised through the same media;
> (8) the extent to which the targets of the parties' sales efforts are the same;
> (9) the relationship of the goods in the minds of consumers because of the similarity of function; and
> (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

Lapp, 721 F.2d at 462-63. Although these factors were initially established in the context of non-competing goods, we held in A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 213 (3d Cir. 2000) that these factors should also be applied to directly competing goods as well, with modifications to factors 7, 9, and 10.[2] But we stated that

---

[2] We suggested the following revision: factor 7 "whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media"; factor 9 "the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors"; factor 10 " other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the

11

when the goods are directly competing and the marks are clearly very similar, "a district judge should feel free to consider only the similarity of the marks themselves." Id. at 214 (citing Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990) (very little analysis was necessary in a case where a splinter group of a larger organization continued to use the organization's collective mark)).  Moreover, we stated that the lower court "often need not apply each and every factor; when goods are directly competing, both precedent and common sense counsel that the similarity of the marks takes on great prominence.  At all events, the factors are meant to be tools, not hurdles." Id.  Finally, the Lapp test is qualitative not quantitative: "[n]ot all factors will be relevant in all cases" and "the different factors may properly be accorded different weights depending on the particular factual setting." Id. at 215.

The District Court found that R&B had offered support as to only three of the Lapp factors: (1) degree of similarity between the marks, (2) similar channels of trade for the goods, and (3) the targets of the parties sales efforts.  R&B contends that it offered evidence on other Lapp factors, namely, (3) factors indicative of the care and attention expected of consumers when making a purchase, (5) the intent of the defendant in adopting the mark, and (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.  R&B's arguments at base are an objection to the weight accorded by the District Court to various evidence under the Lapp

defendant's market, or expect that the prior owner is likely to expand into the defendant's market." 237 F.3d at 215.

factors.

The District Court did not err in its evaluation of the Lapp factors here. Our scope of review is clear: we cannot reverse the District Court's denial of a motion for preliminary injunction "unless the trial court has committed an obvious error in applying the law or serious mistake in considering proof." Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 802 (3d Cir. 1998). The District Court did find that the marks are virtually identical, that the goods moved in similar channels of trade, and that the targets of the parties' sales efforts were the same. However, the District Court also concluded that: (1) the strength of the NEED! mark was limited because the paintbrush sales under the NEED! mark amounted to only $10,000 per year; (2) the prices of the goods at issue are relatively low; (3) the functions of the goods are dissimilar: the NEED! certificate of registration lists mostly household items such as picture hangers, nails, and electrical plugs, and the current use of the mark is limited to selling paintbrushes, whereas the Needa? mark focuses on automotive parts; and (4) there is no evidence that the NEED! has ever been used to sell automotive parts or that it will ever be so used. Although it is true that the similarity of the marks -- especially in the context where the goods are in direct competition -- is an important factor, it is not the only or even dispositive factor. The District Court properly weighed the evidence under the Lapp factors and concluded that there was no likelihood of success on the merits of R&B's trademark claim with respect to the NEED! mark. This was not in obvious error under Lapp and its progeny.

R&B contends that the District Court erred when it concluded that the "MM"

13

logo was not a valid trademark, because it was a descriptive mark and therefore R&B had to establish secondary meaning, but did not. R&B claims that the defendants sold products under the Needa name that were stamped or imprinted with the plaintiff's unregistered "MM" mark, in violation of the plaintiff's trademark rights. However, the District Court correctly concluded that there was no evidence that the defendant's products were stamped with the "MM" mark. The District Court correctly noted that the defendants have admitted that they resell R&B products, but they have not admitted that those products are stamped with the MM mark. In its reply brief, R&B states that Needa has admitted this, but examination of the record suggests that this statement is in error. R&B cites Needa's counsel's statement that "[Needa] sold parts, at least they've packaged parts with the M. They actually didn't prove it. We admitted it because it's true." The question is not whether the packaging had an M on it but whether the packaging had a "MM" on it which is short for MOTORMITE. Thus, this "admission" does not get R&B anywhere.

The District Court went on to hold that even if there were imprints on the packaging, R&B failed to show that the unregistered "MM" mark is valid and protectable. Because R&B did not prove that the mark was inherently distinctive, it was required to prove that it was descriptive with a secondary meaning. R&B argues that because it registered the MOTORMITE mark and the MM mark is an abbreviation of MOTORMITE, R&B did not have to prove that MM is descriptive or that there is a secondary meaning. Even so, R&B did present some evidence with regard to secondary meaning, but this evidence was very thin. It consisted solely of one regional sales manager's testimony that

14

some of R&B's customers identify the "MM" designation with MOTORMITE. The District Court properly found that this statement alone was insufficient to support a finding of secondary meaning and therefore validity had not been shown by R&B.

Next, the District Court concluded that the evidence for secondary meaning of the part numbers was insufficient to prove that they were descriptive marks and thus R&B did not meet its burden of proving validity of the mark. R&B argued that the part numbers served as grade or style designations, and that the defendants' use of the part numbers constitute trademark infringement. Needa admits that it has used the part numbers, but argues that R&B has not shown that the part numbers were valid trademarked works. As the District Court stated, because grade or style designations are descriptive marks, R&B was required to show secondary meaning to qualify for trademark protection. See J.M. Huber Corp. v. Lowery Wellheads, Inc., 778 F.2d 1467, 1469 (10th Cir. 1985); McCarthy on Trademarks and Unfair Competition § 11:37 (4th ed. 1998). R&B's only evidence of secondary meaning consisted of testimony of a former regional sales manager who stated that some consumers asked him for products by part number, but did not testify as to whether the consumers associated the part number with the source -- R&B -- or with the product itself. As such, the District Court properly concluded that R&B failed to show that its part numbers have become "uniquely associated with its goods or business in the minds of consumers."

Finally, the plaintiff frames its repackaging argument as a trademark infringement claim. R&B argues that Needa purchases new R&B products, repackages

15

them under the Needa? name and then resells them as Needa parts.  The District Court

concluded that R&B had not shown that Needa's repackaging involved any of R&B's

trademarks.  According to the District Court, R&B does not contest that the mark is not on

the packaging, but claims that the MM mark is embossed directly onto the product

themselves that are resold by Needa.  The analysis of this claim is similar to that of the MM

trademark infringement claim.  Because R&B has not shown that the MM mark is valid and

has not carried its burden of proving that the MM mark is actually on the repackaging, the

District Court appropriately denied preliminary injunctive relief.

We have considered all of the plaintiff's arguments and see no basis for

reversal.  The judgment of the District Court denying the motion for preliminary injunction

is therefore AFFIRMED.

_____